131 Cal.Rptr.2d 709 (2003)
107 Cal.App.4th 8
The PEOPLE, Plaintiff and Respondent,
v.
Michael Frederick BRITT, Defendant and Appellant.
No. C033771.
Court of Appeal, Third District.
March 18, 2003.
Review Granted June 11, 2003.
*711 Veronica A. Bonetti, under appointment by the Court of Appeal, Elk Grove, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Senior Assistant Attorney General, J. Robert Jibson, Supervising Deputy Attorney General, Ray Brosterhous and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.
SCOTLAND, P.J.
When a registered sex offender changes his or her residence in California, the person must, within five working days, provide written notification of the change to the law enforcement agency with which the person was last registered. (Pen. Code, § 290, subd. (f)(1); further section references are to this code.) The person also must, within five working days, register with the chief law enforcement officer of the jurisdiction into which the person moves. (§ 290, subd. (a)(1)(A).)
The question posed by this appeal is whether a registered sex offender who fails to notify law enforcement agencies of the person's change of address when he or she moves from one county to another can *712 be prosecuted in one county for the failure to notify law enforcement that the person was leaving the county, and then be prosecuted separately in the other county for the failure to register in that county when the person took up residence there.
As we will explain, both prosecutions are permissible because a person necessarily has two separate intents and objectives in violating both subdivisions (a) and (f) of section 290, and each crime is a separate continuing act that is not so interrelated with the other act as to come within provisions of section 654.

BACKGROUND
As a result of his prior convictions for sexual crimes, defendant Michael Frederick Britt is required to register with the appropriate law enforcement agency where he is domiciled, to notify the agency when he moves, and to register in his new place of domicile. (§ 290.) When defendant moved from Sacramento County to El Dorado County, he failed to notify law enforcement authorities in either county as required by subdivisions (a) and (f) of section 290.[1]
Defendant was arrested in El Dorado County on a Sacramento County arrest warrant alleging defendant had violated section 290, subdivision (f), by failing to notify law enforcement in Sacramento County that he had moved. Ascertaining that he had established residence in El Dorado County but had failed to register his new address, El Dorado County officers also arrested defendant for violating section 290, subdivision (a).
In the criminal proceeding pending in the Sacramento County Superior Court, defendant pled nolo contendere to violating subdivision (f) of section 290.
Thereafter, an information was filed in El Dorado County, charging defendant with violating subdivision (a) of section 290, and alleging he had two prior serious felony convictions within the meaning of the "three strikes law." (§§ 667.5, subd. (c), 1192.7, subd. (c).)
Defendant moved to set aside the information pursuant to section 995 on the ground that he had been convicted previously in Sacramento County for an offense arising out of the same course of conduct and, thus, that the El Dorado County prosecution was barred by section 654. The motion was denied.
After defendant waived his right to a jury trial, the court convicted him of violating section 290, subdivision (a), by failing to register in El Dorado County as a sex offender, and found true the allegations that he had two prior serious felony convictions. However, the court struck the prior convictions for purposes of sentencing and granted defendant probation on various terms, including that he serve 365 days in the county jail.

*713 DISCUSSION
Defendant contends the trial court erred in denying his motion to dismiss the El Dorado County action. In defendant's view, since he was convicted in Sacramento County of violating section 290, subdivision (f), based on his move to El Dorado County without giving the required notice to law enforcement in Sacramento County, section 654 precluded his prosecution in El Dorado County for violating section 290, subdivision (a), based on his failure to register with law enforcement there as a sex offender after establishing residence in that county.
Section 654, subdivision (a), states: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The section goes on to say: "An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."
"Section 654's preclusion of multiple prosecution is separate and distinct from its preclusion of multiple punishment. The rule against multiple prosecutions is a procedural safeguard against harassment and is not necessarily related to the punishment to be imposed." (Neal v. State of California (1960) 55 Cal.2d 11, 21, 9 Cal.Rptr. 607, 357 P.2d 839 (hereafter Neal).) Therefore, "double prosecution may be precluded even when double punishment is permissible." (Ibid.) On the other hand, "if an act or course of criminal conduct can be punished only once under section 654, either an acquittal or conviction and sentence under one penal statute will preclude subsequent prosecution in a separate proceeding under any other penal statute." (Kellett v. Superior Court (1966) 63 Cal.2d 822, 828, 48 Cal.Rptr. 366, 409 P.2d 206 (hereafter Kellett), italics added.)
Accordingly, where "the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (Kellett, supra, 63 Cal.2d at p. 827, 48 Cal.Rptr. 366, 409 P.2d 206, fn. omitted.)
Defendant's crimes were not based on a single act or omission, but on two omissions: (1) his failure to notify Sacramento County law enforcement that he had moved from his residence there (§ 290, subd. (f)); and (2) his failure to perform the additional act of registering as a sex offender in El Dorado County within five days after establishing residence in El Dorado Hills (§ 290, subd. (a)). (See fn. 1, ante.)
Nonetheless, defendant claims that the multiple prosecution bar of section 654 applies because, in his view, the two violations of section 290 were part of a single course of conduct (moving his place of residence without notifying law enforcement) incident to only one objective (at most to avoid detection by law enforcement). We are not persuaded.
It is true that "section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction." (People v. Perez (1979) 23 Cal.3d 545, 551, 153 Cal.Rptr. 40, 591 P.2d 63 (hereafter Perez).) "Whether a course of criminal *714 conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor." (Kellett, supra, 63 Cal.2d at pp. 824-825, 48 Cal.Rptr. 366, 409 P.2d 206, citing Neal, supra, 55 Cal.2d at p. 19, 9 Cal.Rptr. 607, 357 P.2d 839.)
Thus, "[i]f all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. [Citing Neal, supra, 55 Cal.2d at p. 19, 9 Cal.Rptr. 607, 357 P.2d 839.] For example, the defendant in Neal who attempted to murder a husband and wife by throwing gasoline into their bedroom and igniting it, could not be punished for both arson and attempted murder because his primary objective was to kill, and the arson was the means of accomplishing that objective and thus merely incidental to it. [¶] On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were part of an otherwise indivisible course of conduct." (Perez, supra, 23 Cal.3d at p. 551, 153 Cal.Rptr. 40, 591 P.2d 63, fn. omitted.)
This rule, which has been criticized but reluctantly upheld by the California Supreme Court (People v. Latimer (1993) 5 Cal.4th 1203, 1208, 1212-1216, 23 Cal. Rptr.2d 144, 858 P.2d 611), is interpreted very narrowly. (Id. at p. 1211, 23 Cal. Rptr.2d 144, 858 P.2d 611.) It has not been applied where courts have found similar but consecutive objectives or separate, although sometimes simultaneous, objectives under the facts. (Id. at p. 1212, 23 Cal.Rptr.2d 144, 858 P.2d 611.)
And, as the Supreme Court emphasized in Perez, it does not apply to intents and objectives that are "too broad and amorphous." (Perez, supra, 23 Cal.3d at p. 552, 153 Cal.Rptr. 40, 591 P.2d 63.) For example, in a case of multiple sex crimes, the "[assertion of a sole intent and objective to achieve sexual gratification is akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts. To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to insure that a defendant's punishment will be commensurate with his culpability." (Ibid.) Accordingly, where "[n]one of the sex offenses was committed as a means of committing any other, none facilitated commission of any other, and none was incidental to the commission of any other[,] . . . section 654 does not preclude punishment for each of the sex crimes committed by defendant." (Id. at pp. 553-554,153 Cal.Rptr. 40, 591 P.2d 63.)
As we will explain, this reasoning of Perez applies equally to defendant's failure to comply with section 290, subdivision (f), in Sacramento County and his failure to comply with section 290, subdivision (a), in El Dorado County.
Section 290 is intended to promote the state's interest in preventing recidivism by sex offenders. (Wright v. Superior Court (1997) 15 Cal.4th 521, 527, 63 Cal.Rptr.2d 322, 936 P.2d 101 (hereafter Wright).) "Plainly, the Legislature perceives that sex offenders pose a `continuing threat to society' [citation] and require constant vigilance. [Citation.]" (Ibid.) Hence, "[t]he purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future." (Barrows v. Municipal Court (1970) 1 Cal.3d 821, 825-826, 83 Cal.Rptr. *715 819, 464 P.2d 483; accord, Wright, supra, 15 Cal.4th at p. 527, 63 Cal.Rptr.2d 322, 936 P.2d 101.)
This purpose, to help law enforcement agencies "keep track of sex offenders" who are mobile (Wright, supra, 15 Cal.4th at p. 527, 63 Cal.Rptr.2d 322, 936 P.2d 101), is achieved by requiring a sex offender to do two separate acts: (1) if the person comes into any city, county, or city and county to reside, even if only temporarily, he or she must register with the law enforcement agency of that jurisdiction (§ 290, subd. (a)), and (2) if the person changes residence, he or she must provide his or her new address or location to the law enforcement agency with which the person last registered (§ 290, subd. (f)). That agency is then required to forward the offender's new address or location to California's Department of Justice which, in turn, must forward the data to the law enforcement agency having local jurisdiction over the offender's new place of residence or location. "Without [these two timely change-of-address notice requirements,] law enforcement efforts will be frustrated and the statutory purpose [to protect the public against recidivist sex offenders] thwarted." (Wright, supra, 15 Cal.4th at p. 527, 63 Cal.Rptr.2d 322, 936 P.2d 101.)
Thus, the dual notification requirements of subdivisions (f) and (a) of section 290 serve multiple and separate objectives for separate communities.
First, requiring a registered sex offender who moves from a city or county to so inform the law enforcement agency of that community accomplishes two investigative objectives. It puts the agency on notice that the sex offender no longer poses the same threat to the community because he or she has left the area; thereby allowing the agency to focus its time and resources on sex offenders who remain in the community and not waste them on someone who has gone from the area. It also serves as a fail-safe mechanism to ensure that law enforcement agencies keep track of a sex offender who moves and fails to register in his or her new place of residence or location. This is so because, as we have noted, the new address or location information that the offender provides to the agency of the city or county from which he or she moved is forwarded to California's Department of Justice, which sends the information to law enforcement agencies where the offender has relocated. (§ 290, subd. (f).)
Second, requiring a sex offender who moves into a city or county to register there within five working days promptly puts the local law enforcement agency on notice that a person who is likely to commit sex crimes is present in the community. This helps the agency protect the public in that community by immediately keeping track of a sex offender who has relocated there.
Third, because certain sex offender registration information is readily available to the public (§ 290.4), the dual notification requirements provide community residents with knowledge that may affect the way they conduct their lives and the lives of their families to minimize the risk of being victimized by a sex offender.
Consequently, the failure to comply with both subdivisions (f) and (a) of section 290 thwarts the legislative scheme in two ways: (1) it allows the sex offender to mislead law enforcement and the residents of one community to believe he or she remains in that community, thus affecting both law enforcement practices and the manner in which that community's residents may conduct their lives; and (2) it allows the sex offender to come into another community and live there while keeping law enforcement and residents of that *716 community ignorant of the sex offender's presence.
Accordingly, a sex offender necessarily has two separate intents and objectives in violating both subdivisions (a) and (f) of section 290:(1) to mislead law enforcement and the residents of one community to believe that the sex offender remains there; and (2) to conceal from law enforcement and the residents of another community the fact that the sex offender is now residing in that community. And in view of the separate adverse consequences, recounted above, which result from the failure to comply with both subdivisions, a sex offender who violates both subdivisions is more culpable than a sex offender who violates only one. Thus, it is too broad to characterize the intent and objective of their violation to be, as defendant puts it, simply the avoidance of detection by law enforcement. Rather, the test for the applicability of section 654 should be whether the failure to comply with either of the section 290 notification requirements was committed as a means to violate the other requirement, whether either violation facilitated commission of the other, or whether either was incidental to the commission of the other. (See Perez, supra, 23 Cal.3d at pp. 553-554, 153 Cal.Rptr. 40, 591 P.2d 63.)
Defendant emphasizes the fact that both crimes involved his move from Sacramento County to El Dorado County. But the act of moving is not prohibited by section 290, and it is not the conduct for which defendant was charged. He was prosecuted for failing to perform two separate acts, which were two distinct violations of section 290. Proof of either act was not dependent on proof of the other. Because neither crime was committed as a means of committing the other, neither crime facilitated commission of the other, and neither crime was incidental to the commission of the other, section 654 does not preclude punishment for both crimes. (Cf. Perez, supra, 23 Cal.3d at pp. 553-554, 153 Cal.Rptr. 40, 591 P.2d 63.)
The fact that both of defendant's violations of section 290 involved his move from one county to another does not mean the Sacramento County offense was part of a course of conduct which played a "significant part" in the El Dorado County offense within the meaning of Kellett and section 654. (Cf. People v. Cuevas (1996) 51 Cal.App.4th 620, 623-626, 59 Cal. Rptr.2d 146 [drug offenses committed on different dates and in different places need not be prosecuted in a single proceeding]; People v. Martin (1980) 111 Cal.App.3d 973, 978, 169 Cal.Rptr. 52 [separate prosecutions for burglary and for the possession a week later of a sawed-off shotgun taken in the burglary]; People v. Hurtado (1977) 67 Cal.App.3d 633, 636-637, 136 Cal.Rptr. 774 [separate prosecutions for driving under the influence of alcohol and for possessing heroin found in the car during the traffic stop; "the only common ground [is] the fact that defendant was in the moving automobile in possession of the heroin at the same time that he was under the influence of alcohol. Such a trivial overlap of the evidence . . . does not mandate the joinder of these cases"].)
Rather, each of defendant's violations of section 290 was a separate "continuing offense"; he did not commit the crimes "only at the particular moment the [notification requirements arose], but every day [they] remain[ed] unsatisfied." (Wright, supra, 15 Cal.4th at p. 528, 63 Cal.Rptr.2d 322, 936 P.2d 101.) Thus, the crimes continued to be committed at different times and involved different places; and evidence of the Sacramento County offense did not necessarily supply proof of the El Dorado County offense, or vice versa. Under the circumstances, defendant was not subjected to a second trial in El Dorado County *717 for a crime arising out of the same operative set of facts.
Accordingly, the separate violations of subdivisions (a) and (f) of section 290 were not so interrelated as to invoke the prohibition against multiple prosecutions.
And because it can be said that defendant had two separate intents and objectives in violating subdivisions (a) and (f) of section 290, section 654 does not bar punishing him for both of those violations. (Kellett, supra, 63 Cal.2d at pp. 824-825, 48 Cal.Rptr. 366, 409 P.2d 206; cf. People v. Watts (1999) 76 Cal.App.4th 1250, 1265, 91 Cal.Rptr.2d 1.)
In light of our conclusion, we need not decide whether the El Dorado County offense could have been joined with the Sacramento County offense (§ 781) or whether defendant has established that the prosecutors in Sacramento County were aware, or should have been aware, of the El Dorado County offense (Kellett, supra, 63 Cal.2d at p. 827, 48 Cal.Rptr. 366, 409 P.2d 206) when they prosecuted him for a violation of section 290, subdivision (f), based on his failure to notify Sacramento County law enforcement that he had moved away from the jurisdiction.

DISPOSITION
The judgment is affirmed.
I concur: MORRISON, J.
SIMS, J.
I respectfully dissent.
As I shall explain, prosecution of the El Dorado County offense was barred by Penal Code section 654 because defendant had been convicted and sentenced on the Sacramento County offense and he could not properly be punished for both the Sacramento County offense and the El Dorado County offense. (Further statutory references are to the Penal Code.)
Defendant was convicted in Sacramento County of failing to notify Sacramento authorities that he had moved his residence from that county pursuant to subdivision (f)(1) of section 290, which provides: "If any person who is required to register pursuant to this section changes his or her residence address or location, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state, the person shall inform, in writing within five working days, the law enforcement agency or agencies with which he or she last registered of the new address or location. The law enforcement agency or agencies shall, within three days after receipt of this information, forward a copy of the change of address or location information to the Department of Justice. The Department of Justice shall forward appropriate registration data to the law enforcement agency or agencies having local jurisdiction of the new place of residence or location."
Defendant was later convicted in El Dorado County of failing to register his new address there pursuant to subdivision (a)(1)(A) of section 290, which provides: "Every person described in paragraph (2), for the rest of his or her life while residing in, or, if he or she has no residence, while located within California, or while attending school or working in California, as described in subparagraph (G), shall be required to register with the chief of police of the city in which he or she is residing, or if he or she has no residence, is located, or the sheriff of the county if he or she is residing, or if he or she has no residence, is located, in an unincorporated area or city that has no police department, and, additionally, with the chief of police of a campus of the University of California, the California State University, or community *718 college if he or she is residing, or if he or she has no residence, is located upon the campus or in any of its facilities, within five working days of coming into, or changing his or her residence or location within, any city, county, or city and county, or campus in which he or she temporarily resides, or, if he or she has no residence, is located."
Section 654 subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." (Italics added.)
"If an act or course of criminal conduct can be punished only once under section 654, either an acquittal or conviction and sentence under one penal statute will preclude subsequent prosecution in a separate proceeding under any other penal statute." (Kellett v. Superior Court (1966) 63 Cal.2d 822, 828, 48 Cal.Rptr. 366, 409 P.2d 206.)
Here the record shows the defendant was prosecuted, convicted, and sentenced on the Sacramento County offense on January 15, 1999. He was prosecuted later in El Dorado County by information filed March 12, 1999. He moved to set aside the El Dorado County information on the ground prosecution was barred by section 654. However, the trial court denied the motion.
In order to determine whether he could be separately punished for the Sacramento County registration offense and for the El Dorado County registration offense we apply the test of Neal v. State of California (1960) 55 Cal.2d 11 at page 19, 9 Cal.Rptr. 607, 357 P.2d 839 which was recently reaffirmed by our California Supreme Court in People v. Latimer (1993) 5 Cal.4th 1203 at page 1208, 23 Cal.Rptr.2d 144, 858 P.2d 611. That test is: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (Neal, supra, 55 Cal.2d at p. 19, 9 Cal.Rptr. 607, 357 P.2d 839, followed in Latimer, supra, 5 Cal.4th at p. 1208, 23 Cal.Rptr.2d 144, 858 P.2d 611.)
In my view, defendant acted with one intent and objective in committing these two registration offenses: to move from Sacramento County to El Dorado County without notifying law enforcement.
In reaching this conclusion, I am the first to admit that, "section 654 is an analytical nightmare. [Citations.]" (People v. Maese (1980) 105 Cal.App.3d 710, 726, 164 Cal.Rptr. 485.) To my knowledge, there are no California cases construing how section 654 applies to nonviolent registration offenses. However, I think that the most apt analogy is found in the following rule, applicable to non-violent offenses, announced by our Supreme Court in People v. Beamon (1973) 8 Cal.3d 625 at page 638, footnote 10, 105 Cal.Rptr. 681, 504 P.2d 905: "where a course of conduct involves only crimes against property interests of multiple victims, common sense requires, in the absence of other circumstances, a determination of the indivisibility of the course of conduct and the applicability of section 654. [Citations.]"
Thus, in People v. Bauer (1969) 1 Cal.3d 368 at page 378, 82 Cal.Rptr. 357, 461 P.2d 637, the court said, "Where . . . the offenses arising out of the same transaction are not crimes of violence but involve *719 crimes against property interests of several persons, this court has recognized that only single punishment is permissible. Thus, this court has pointed out that the theft of several articles at the same time constitutes but one offense although such articles belong to several different owners. [Citations.] This view has been followed '[i]n the vast majority of cases' where it has arisen or been discussed. [Citations.]" (See also People v. Brooks (1985) 166 Cal. App.3d 24, 30-32, 210 Cal.Rptr. 90.)
In order to conclude that multiple punishment is proper in this case, the majority rely heavily on People v. Perez (1979) 23 Cal.3d 545, 153 Cal.Rptr. 40, 591 P.2d 63. I do not think Perez's rule should be applied to this case. The pertinent facts of Perez, in the words of the court, are as follows:
"The victim was the manager of the apartment building in which defendant lived. Defendant asked her to come to his apartment to check his complaint about the floors. When she entered, defendant grabbed her and subjected her to a brutal sexual attack. During a period of 45 minutes to an hour, defendant orally copulated her, committed sodomy on her, forced her to orally copulate him, had vaginal intercourse with her, forced her to orally copulate him again, and then again had vaginal intercourse with her. He also forcibly inserted a metal tube into her rectum and vagina." (People v. Perez, supra, 23 Cal.3d 545, 549, 153 Cal.Rptr. 40, 591 P.2d 63.)
Our Supreme Court concluded that, in committing this series of acts in "a brutal sexual attack" defendant could be separately punished for each of the sex offenses. (Perez, supra, 23 Cal.3d 545, 553, 153 Cal.Rptr. 40, 591 P.2d 63.) The court reasoned, "Defendant asserts that the trial court properly found that his sole intent and objective was to obtain sexual gratification, and that since the evidence supports this finding, the trial court's ruling must be upheld. We disagree. Such an intent and objective is much too broad and amorphous to determine the applicability of section 654. . . ."
"A defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act." (Perez, supra, 23 Cal.3d 545, 552, 153 Cal. Rptr. 40, 591 P.2d 63.)
In his dissent in Perez, Justice Mosk accurately characterized the Perez rule as a result of the majority's "understandable revulsion at the brutality of defendant." (People v. Perez, supra, 23 Cal.3d at p. 556, 153 Cal.Rptr. 40, 591 P.2d 63, dis. opn. of Mosk, J.) Our Supreme Court has recently described Perez's rationale for narrowly defining a sex crime as permitting "commensurate punishment for the more culpable defendant who has committed multiple sex crimes against a victim." (People v. Jones (2001) 25 Cal.4th 98, 111, 104 Cal.Rptr.2d 753, 18 P.3d 674.) In People v. Hammon (1987) 191 Cal.App.3d 1084 at page 1094, 236 Cal.Rptr. 822, Justice Sparks of this court, with Presiding Justice Puglia and Justice Evans concurring, characterized the rule in Perez as "the specific wrinkle the Supreme Court added to the cloth of section 654 jurisprudence applicable solely to sexual offenses." (Id. at p. 1094, 236 Cal.Rptr. 822.)
The rule of Perez, which was adopted by our Supreme Court to ensure just punishment for violent sexual offenses, should not be applied to this wholly nonviolent registration case, because application of the rule will result not in "commensurate punishment" (People v. Jones, supra, 25 Cal.4th at p. 111, 104 Cal.Rptr.2d 753, 18 P.3d 674) but in just the opposite. Although the defendant in this case did not *720 receive a three strikes sentence, because the trial court struck his "strikes," cases coming through this court since enactment of the three strikes law have demonstrated that section 290 is often being used to sweep nonviolent offenders off the streets and to warehouse them in state prison for 25 years to life. This is a very long time indeed to send people to prison for having failed to register their address. Because many (perhaps most) of these people failed to register in the county where they left and also in the county where they arrived, this case will mean that these people will be going to state prison for terms of 50 years to life. Frankly, I want no part of this.
I also think that another argument made by the majority contains a logical flaw. The majority argues that subdivisions (a) and (f) of section 290 have different legislative objectives. The majority then concludes, "accordingly, a sex offender necessarily has two separate intents and objectives in violating both subdivisions (a) and (f) of section 290. . . ."
In my view, and with respect, this argument confuses the intent of the statute with the intent of the actor. People v. Latimer, supra, 5 Cal.4th 1203, 23 Cal. Rptr.2d 144, 858 P.2d 611, implicitly rejects the argument that section 654 does not bar multiple punishments where the statutes that were violated serve different purposes. Thus, Latimer held that where defendant kidnapped the victim for the purpose of raping her, and in fact raped her, punishment on the kidnapping conviction had to be stayed because defendant was punished for rape. (Id. at pp. 1216-1217, 23 Cal.Rptr.2d 144, 858 P.2d 611.) But the purpose of the kidnapping statute  to protect victims from increased risk of harm caused by kidnapping (People v. Martinez (1999) 20 Cal.4th 225, 236-237, 83 Cal.Rptr.2d 533, 973 P.2d 512)  is different from the purpose of the rape statute which is, obviously, to protect the victim from being raped. Latimer's application of section 654 is therefore at odds with the theory that multiple punishments may be justified by the different aims of the statutes violated. To the contrary, a defendant who has but one criminal objective  here the aim of moving anonymously from one county to another  does not maintain multiple different intents simply because he violated different statutes that, themselves, protect different interests.
At oral argument, the Attorney General argued that the prosecution of defendant in El Dorado County was not barred because defendant could not have been prosecuted in Sacramento County for the El Dorado County offense.
The Attorney General relies on the following passage from Kellett v. Superior Court, supra, 63 Cal.2d 822 at page 827, 48 Cal.Rptr. 366, 409 P.2d 206: "When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause." (Emphasis added.) The Attorney General asserts that because the Sacramento and El Dorado offenses occurred in different counties, they could not both be prosecuted in Sacramento County. (See § 777.)
Preliminarily, it is not clear to me that the rule from Kellett, relied on by the Attorney General, applies to a situation where a defendant cannot be punished for both offenses. The statutory language of section 654 on this point, set out ver batim at the outset of this opinion, is categorical and contains no exception where the two offenses cannot be prosecuted together. The aim of section 654 on this point appears to be to save the expenditure of *721 public funds on a second trial that cannot result in additional punishment. And, indeed, Kellett itself discusses this situation (where a defendant cannot be punished for both offenses) in a portion of the opinion that follows, and is separate from, the rule relied upon by the Attorney General. (See Kellett, supra, 63 Cal.2d 822, 828, 48 Cal. Rptr. 366, 409 P.2d 206.)
Nonetheless, assuming for the sake of argument that the Kellett rule applies (allowing serial prosecutions where two crimes could not be prosecuted in the same county), the rule is inapplicable here because the El Dorado offense could have been prosecuted in Sacramento County.
Thus, section 781 provides, "When a public offense is committed in part in one jurisdictional territory and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within either jurisdictional territory."
Although section 781 is couched in terms of "jurisdiction," the question is really one of proper venue. (People v. Simon (2001) 25 Cal.4th 1082, 1096, 108 Cal.Rptr.2d 385, 25 P.3d 598.) "Numerous decisions establish that the provisions of section 781 must be given a liberal interpretation to permit trial in a county where only preparatory acts have occurred. [Citations.]" (Id. at p. 1109, 108 Cal.Rptr.2d 385, 25 P.3d 598.) In this case, defendant's obligation was to register in El Dorado County "within five working days of coming into, . . . any . . . county . . . ."(§ 290(a)(1)(A).) The prosecution was obligated to show that defendant came into El Dorado County from Sacramento County. His prior residence in Sacramento County, and his move therefrom, were therefore either elements of the El Dorado County offense or were, at the very least, preparatory acts. Because these acts occurred in Sacramento County, defendant could have been prosecuted there for the El Dorado County offense. The Attorney General's argument to the contrary, advanced for the first time at oral argument, is not meritorious.
Finally, I think that multiple prosecution and multiple punishment for these two registration offenses is chicken. In ordinary parlance, I would use a slightly different word than "chicken," but, after all, this is an opinion.
Because defendant could not properly be punished for the Sacramento County and El Dorado County offenses, he could not be prosecuted for the El Dorado County offense. (§ 654; Kellett v. Superior Court, supra, 63 Cal.2d 822, 828, 48 Cal.Rptr. 366, 409 P.2d 206.)
The judgment should be reversed.
NOTES
[1] At the time defendant moved to El Dorado County, section 290 provided in pertinent part:

"(a)(1) Every person [who has been convicted of certain enumerated sexual offenses], for the rest of his or her life while residing in California, shall be required to register with the chief of police of the city in which he or she is domiciled, or the sheriff of the county if he or she is domiciled in an unincorporated area, . . . within five working days of coming into any city, county, or city and county in which he or she temporarily resides or is domiciled for that length of time.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(f) If any person who is required to register pursuant to this section changes his or her name or residence address, the person shall inform, in writing within five working days, the law enforcement agency or agencies with whom he or she last registered of the new name or address. . . ." (Stats. 1996, ch. 909, § 2.)